IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
~~WESTERN~~ DIVISION
*Southern*

**FILED**

MAY 31 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**ENTERED**

JAMES LANDERS, SUSAN LANDERS,    )
and JOIYA POSEY,    )
   )
   Plaintiffs,    )
   )
   )
v.    )   CIVIL ACTION NUMBER  JUN 0 : 2001
   )   **01-C-0645-WS**
CROWN PONTIAC, INC., GENERAL    )
MOTORS ACCEPTANCE CORP.,    )
DEBIS FINANCIAL SERVICES, INC.,    )
and LOBEL FINANCIAL    )
   )
   Defendants.    )

## MEMORANDUM OPINION

On March 15, 1999, Plaintiff Joiya McGlothan (now Joiya Posey), an African-American, and Ben Johnson (not a party to this action) entered into a retail installment contract ("Installment Contract") with Defendant Crown Pontiac ("Crown") for the purchase of an automobile. Crown subsequently assigned all of its rights, title and interests in the Installment Contract to Defendant Debis Financial Services, Inc. ("Debis"). Plaintiff Posey makes payments directly to Debis.

On March 19, 1999, Plaintiffs James and Susan Landers, African-Americans, entered into an Installment Contract with Crown. GMAC and Lobel Financial ("Lobel") financed their automobile purchase.

In connection with the purchase of their cars, Plaintiff Posey and Johnson and Plaintiffs Landers signed buyer's orders containing an arbitration agreement ("Arbitration Agreement"). The Arbitration Agreement provides, in part:

> The undersigned and Crown mutually covenant, stipulate and agree, in connection
> with the resolution of any dispute arising out of all of the contract(s) and agreements



entered into by the parties of and concerning this transaction, as follows: That the vehicle being purchased . . . has operated and will continue to operate on interstate highways; has been traveling in interstate commerce . . . . The undersigned agree that all disputes not barred by applicable statutes of limitations, resulting from or arising out of the transaction entered into, (including but not limited to: the terms of this agreement and all clauses herein contained, their breadth and scope . . . <u>any lease terms or the terms of credit and/or financing in connection therewith</u> . . .agree to submit such dispute(s) to BINDING ARBITRATION; pursuant to the provisions of 9 U.S.C. Section 1, et seq. and according to the Commercial Rules of the American Arbitration Association (the AAA). . . . The Commercial Rules of the AAA shall apply including that: (a) The party seeking affirmative relief shall prepay all obligatory AAA prepaid arbitration filing fees. . . .

THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT AND IN LIEU OF ANY TRIAL BY JURY.

(Crown Brief at 2 (quoting Arbitration Agreement) (emphasis added.))

Plaintiff Posey filed this case as a class action, alleging that Crown, GMAC and Debis discriminated against her on the basis of race, allegedly requiring her to pay a higher rate of interest, or higher down payment, in connection with the purchase of her vehicle than white customers.

Plaintiffs Landers joined in the class action as named plaintiffs, alleging that Crown, GMAC and Lobel discriminated against them on the basis of race when they required them to pay a higher rate of interest, or higher down payment, in connection with the purchase of their vehicle than white customers.  Plaintiffs Landers have not asserted any claims against Debis.

### Arbitration

The Federal Arbitration Act ("FAA") makes enforceable a written arbitration provision in a contract evidencing a "transaction involving interstate commerce." 9 U.S.C. § 2. The FAA preempts conflicting state anti-arbitration rules, and contracts that are subject to the FAA should be "rigorously enforced." *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *Moses H. Cone Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24 (1983).

The FAA applies if a transaction involves interstate commerce "in fact." *Allied-Bruce Terminix v. Dodson*, 513 U.S. 265, 270 (1995). "Involving commerce," as used in the FAA, is the functional equivalent of "affecting commerce," as used in the context of the Commerce Clause. *Allied-Bruce*, 513 U.S. at 270-71.

Additionally, an arbitration clause must be broad enough to cover the asserted dispute. In *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986), the Supreme Court stated that the presumption of arbitrability can only be overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." If a court determines that a clause is broad, then the presumption of arbitrability is even greater. *AT&T*, 475 U.S. at 650. Arbitration clauses using the term "arising out of or relation to" are considered broad. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 399 (1967).

Contracts containing arbitration agreements that are assigned carry with them the presumption of arbitrability. *See Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753 (11th Cir. 1993).

Claims asserted under 42 U.S.C. § 1981 are subject to arbitration. The Civil Rights Act of 1991 provides that:

> Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, fact finding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

Pub.L. No. 102-166, § 118, 105 Stat. 1071, 1081 (codified at 42 U.S.C. § 1981). In *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412 n.13 (11th Cir. 1998), the Eleventh Circuit rejected the notion that § 1981 was different from other federal statutory claims. It stated that "it would be incongruous for [the Court] to treat § 1981 differently since in the past [it has] held that the elements of a

disparate treatment claim of [] discrimination under § 1981 and Title VII are identical. *Peterson*, 132 F.3d at 1412 n.13.

Where a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, the party bears the burden of showing the likelihood of incurring such cost. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000).

### Discussion

Within all probability, Plaintiffs would face difficulty in meeting the arbitration expenses in this case. Since the amount of their claim can not be stated at this time, the minimum initial filing fee required by the AAA Rules of Commercial Arbitration is $3,250, plus a case service fee of $750. The arbitrator must be paid separately at a fixed hourly rate, and a hearing room rental must also be paid. The Plaintiffs are facing over $3,300 in fees.

But the rub is that Plaintiffs' counsel has utterly failed to present any evidence of Plaintiffs' inability to pay these rather substantial costs. The United States Supreme Court has indubitably held that plaintiffs have the burden of proving inability to pay arbitration costs. *Green Tree*, 531 U.S. at 87-89; *see First Family Servs., Inc. v. Rogers*, 736 So. 2d 553 (Ala. 1999). In the absence of proof, the Court simply cannot assume Plaintiffs' inability to pay these fees. Plaintiffs' counsel has not supplied the Court with affidavits of inability. Without such proof, the Court must defer to arbitration. *Green Tree*, 531 U.S. at 87-89.

### Conclusion

The motion to compel arbitration and to stay will accordingly be converted to a motion to dismiss without prejudice, and so converted, granted by separate order.

DONE this _31st_ day of May, 2001.

Chief United States District Judge
U.W. Clemon